RECEIVED

JUL 1 0 2015

DEBORAH S. HUNT, Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
No. ~~14-3798~~ *15-1544*

The Shane Group, et al.,

*Plaintiffs-Appellees,*

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN

*Defendant-Appellee,*

Appeal of Christopher Andrews,

*Objector-Appellant.*

On Appeal from the United States District Court
For the Eastern District of Michigan, No. 2:10-cv-14360-DPH-MKM

Principal Brief
of Appellant Christopher Andrews

Christopher Andrews
PO Box 530394
Livonia, MI 48153
248-635-3810

Pro se, non attorney

## Corporate Disclosures

Pursuant to 6th Cir. R. 26.1, Christopher Andrews makes the following disclosures:

1. Andrews is not a subsidiary or affiliate of a publicly owned corporation.

2. There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

# Table of Contents

Corporate Disclosures...................................................................................................2

Table of Contents.........................................................................3

Table of Authorities..............................................................................5

Statement in Support of Oral Argument ...............................................8

Statement of Subject Matter and Appellate Jurisdiction................................9

Statement of the Issues...............................................................10

.Standard of Review.............................................................14

Statement of the Case...............................................................16

A. The lawsuit.............................................................16

B. The Andrews objection and supplements ...........................................7

C. The fairness hearing.............................................................8.

D. The court approves the settlement, fee award, unseen expenses and incentive

awards.............................................................10

Summary of the Argument ..................................................20

Argument .............................................................20

Class membership dates in the amended complaint do not match the stipulation of

settlement, opinion and order, the settlement may be defective....................... 20

Invalid class members and therefore the named plaintiffs could not have protected the

best interests of the class, violating Rule 23....................................... 21

Failure of the notice program and plan of allocation under Rule 23....................24

Blue Cross Blue Shield of Michigan is a partner of and donates to the Cy pres recipient,

a clear conflict making the settlement an error. .............................................29

The release in the claim form is invalid rendering the approval null and void.........30

Class counsel's fee submission has clear evidence of misconduct rendering class counsel

unfit and the settlement invalid under Rule23...............................................31

The $2.5 million sight unseen "expert's fee" and $1 million in other expenses are

unverified and appear inflated...................................................... 32

The sanction motion,  Class Counsels stipulation of release and violation of secrecy

pledge all point to class counsel being unqualified to represent the best interests of the

class under Rule 23 standards thus making the approval an abuse of discretion.........35

Conclusion .......................................................................37

Certificate of Compliance with Fed. R. App. Proc. 32(a)(7)(C)........................38

Proof of Service...................................................................39

Addendum of Designations of Relevant District Court Documents...................40

Appendix.........................................................................41

# Table of Authorities

Cases:

Accord Redman v. Radio Shack Corp, --F.3d--, 2014 U.S. App. LEXIS 18181, 2014 WL 4654477 (7th Cir. Sept. 19, 2014)………………………………………………..10

Adcock-Ladd v. Sec'y of Treasury , 227 F.3d 343, 349 (6th Cir. 2000) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc. , 209 F.3d 552, 560 (6th Cir. 2000)).See Marisol A. v. Giuliani,126 F.3d 372, 375 (2d Cir. 1997)………………….15

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 619-20 (1997)…………….11,13,15

Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir.2012………………..11

Beattie v. CenturyTel, Inc., 234 F.R.D. 160, 169 (E.D. Mich. 2006)(quoting  Stout v. J.D. Byrider , 228 F.3d 709, 717 (6thCir. 2000))………………………………… 12

 Bowling v. Pfizer, Inc., 102 F.3d 777, 779 (6th Cir. 1996)…………………………...15

Bluetooth Product Liab. Litigation., 654 F.3d 935, 947-49 (9th Cir. 2011)………..…10

*Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x. 498, 501-02 (6th Cir. 2006), " *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich.)…………..13

*Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007)………………………………………………………………34

Compact Disc Minimum Advertised Price Antitrust Litigation, 216 F.R.D. 197, 203 (D.Me.2003);see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174, 94 S.Ct. 2140,

L.Ed.2d 732 (1974); Mullane v. Cent. Hanover Bank & Trust Company 339 U.S. 306,
315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)……………………………………..…14

Cummings v.Connell , 316 F.3d 886, 896 (9th Cir. 2003) (citing Soc. Servs. Union,
Local  535 v. County of Santa Clara , 609 F.2d 944, 948-49 (9th Cir. 1979))………23

Delvin v. Scardelleti, *536 U.S. 1 (2002)*……………………………..……..9

Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993).  …………..…………15

Dry Max Pampers Litigation 724 F.3d 713, 718 (6th Cir. 2013) (Kethledge, J.)…*10,27*

Dry Max Pampers, 724 F.3d at 717…………………………………..……14

Greier v. Sundquist, 372 F.3d 784, 789–90 (6th Cir. 2004)(quoting First Tech. Safety
Sys., Inc. v. Depinet , 11 F.3d 641, 647 (6th Cir. 1993))……………..…………....15

General General Motors, 55 F.3d at 800……………………………….………..12

General Motors 55 F.3d at 795 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d
Cir. 1968))……………………………………………………………12

Kalamazoo River Study Group v. Rockwell International Corporation, 355 F.3d 574,
583 (6th Cir. 2004)…………………………………………..……..14

Katrinia Canal Breaches Litigation, 628 F.3d 185, 196 (5th Cir.2010)…………..…`12

Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 24 (1st Cir. 2012))…………..30

*Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997)…………………………..15

McCrary v. Elations Company,  2014 U.S. Dist. LEXIS 8443, at *36 (C.D. Cal. Jan. 13,
2014). Blum v. Stenson, 465 U.S. 886, 895 (1984);  Gonter v. Hunt Valve Company,

510 F.3d 610, 618 (6th Cir. 2007)……………………………………....…13,33

Olden v. Gardner , 294 F. App'x 210, 219 (6th Cir. 2008)(quoting Cal. Micro Devices

Sec. Litig. , 168 F.R.D. 257, 262 (N.D. Cal. 1996))…………………………………24

Reeb v. Ohio Department of Rehablitation, 435 F.3d 639, 644 (6th Cir. 2006). Amchem

Products, Inc. v. Windsor, 521 U.S. 591, 619-20 (1997)………………………………14

Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 641 (5th Cir. 2012))….28

Union Asset Mgmt. Holding A.G., 669 F.3d at 642-45)……………………………..32

Vassalle v. Midland Funding LLC , 708 F.3d 747, 755 (6th Cir. 2013)………………27

Wal-Mart Stores, Inc. v. Dukes , 131 S. Ct. 2541, 2551 (2011.)…………………....…22

Wetzel, 508 F.2d at 247. ……………………………………………………………12

Rules and Statutes

Fed. R. App. Proc. 4(a)(1)(A)……………………………………………………..9

28 U.S.C. § 1291………………………………………………………………….9

Fed. R. Civ. P. 23(a)(4)……………………………………………………...11,12

Fed.R.Civ.P. 23(e)(1)…………………………………………………………....12,13

Rule 23(e)……………………………………………………………………32, 35

Rule 23(e)(1)………………………………………………………………....…14,15

Rule 23(a)(4) ……………………………………………………………………12

Rule 23(a)(4) and (g)(4)……………………………………………………..…34

Other Authorities:

Janowicz, Tiffaney, et al., Settlement Administration: Impacting Claims Filing Rates
(Feb 18, 2014) available at http://media.straffordpub.com/products/crafting-class-
settlementnotice-programs-due-process-reach-claims-rates-and-more-2014-02-
18/presentation.pdf ............................................................................................28

http://www.fcomi.org/partners.html.............................................................................29

https://www.michiganhospitalpaymentslitigation.com/Content/Documents/Settlemen
t%20Agreement.pdf ...................................................................31

## Statement in Support of Oral Argument

Pursuant to 6th Circuit Rule 34, Appellant Christopher Andrews, a pro se, non lawyer
respectfully requests that the Court hear oral argument in this case because it presents
significant issues concerning class action settlements. These issues regarding the
approval process and attorney fee calculations under the requirements of Rule 23 under
existing Sixth Circuit precedent pit this district court's decision against those of this and
all other Circuits in this country which the appellant addresses, which are extremely
meritorious. The issues to be addressed require guidance and streamlining for all district
courts to follow in this circuit so attorneys don't continue to end with approved
settlements and windfalls that violate Rule 23 requirements and common sense with no
one but the plaintiffs bar any the wiser.

## Statement of Subject Matter and Appellate Jurisdiction

Class member and objector Christopher Andrews, a citizen of Michigan, filed a timely Objection, supplements and responses to class counsels filings to the proposed class action settlement,  Dkt. 159, 163, 172, 179, 202, 204, 207, 209, and 210. Andrews filed a timely claim for damages, there was no objection by any parties that the appellant was not a legitimate class member who also filed a timely claim with the fund so has standing to object and appeal.  The claim form was filed and received by the administrator on November 15, 2014 at 3:51 pm under the deadline of November 16, 2014 to receive benefits under the settlement.  The claim form was not rejected by the administrator. The court's final judgment was issued on March 31, 2015, Dkt. 215, 139 days after the fairness hearing on November 12, 2014. Andrews filed a timely notice of appeal under Fed. R. App. Proc. 4(a)(1)(A) on April 28, 2015 Dkt. 216.

To the extent the district court has jurisdiction, this court has appellate jurisdiction under 28 U.S.C. § 1291 because this is a timely-filed appeal from a final judgment. Andrews has standing to appeal a final approval of a class action settlement without the need to intervene formally in the case. *Devlin v. Scardelletti,* 536 U.S. 1 (2002).

**Statement of the Issues**

Did the district court abuse its discretion by approving the worst class action settlement

ever proposed in any U.S. District Court despite the dozen material holes, errors,

omissions, fraud and collusion contained within it that prove that the settlement is

clearly flawed, making it presently unfair, inadequate and unreasonable under Rule 23

requirements?

*In re Dry Max Pampers Litigation* holds that class action settlements may not afford

"preferential treatment" to class counsel at the expense of absent class members, and

reversed a settlement approval despite there being only three objections filed (like in

this case.) 724 F.3d 713, 718 (6th Cir. 2013) (Kethledge, J.). *Accord Redman v. RadioShack*

*Corp.*, -- F.3d --, 2014 U.S. App. LEXIS 18181, 2014 WL 4654477 (7th Cir. Sept. 19,

2014) (Posner, J.) (55% recovery); *see also In re Bluetooth Prod. Liab. Litig.*, 654 F.3d 935,

947-49 (9th Cir. 2011).

(a) Is it an error as a matter of law for a district court to approve a $30 million class

action settlement when: (1) it is structured to pay class counsel $10 million in fees out

of a total of $15.5 million claimed, $3.5 million in expenses, ($2.5 million sight unseen)

$1 million for notice mail out with unknown balance also due for administration which

the total expenditure of class counsel's $20 million, netting the class half the settlement

fund (b) is it an error to approve a settlement when class and plaintiffs' counsel inflated

the hourly billing rates by 34% or $5 million, overbilled on hours by up to 34% for

another $5 million overcharge and engaged in a separate $1.4 million ghost promotion inflated billing scheme resulting in cheating the class out of its rightful damages?(c) Is an attorney/law firm guilty of misconduct and charging an unconscionable fee because the attorney's actions contain elements of fraud? (d) Did the district court legally err by approving a settlement with a mirayd of errors in it that clearly fails to meet the guidelines under rule 23?

*Pampers* and *Bluetooth's* warnings of preferential treatment and disproportionate recovery do also apply to this settlement. The Mt Everest size evidence shows that plaintiffs did not meet the applicable criteria and did not "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4); *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997) (the existence of a proposed settlement is relevant to class certification, including whether absent class members' interests are being adequately represented).

(f) Did the district court abuse it's discretion by approving a settlement where the proponents clearly failed to prove the fairness of the settlement based on all the raised issues contained within it? "The burden of proving the fairness of the settlement is on the proponents." 4 Newberg on Class Actions § 11:42 (4th ed.); *see also, e.g., Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir.2012); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir.2010).

(g) Did the district court err by reappointing class counsel when in fact the clear and convincing evidence proves they should not have been reappointed and dismissed? The named class plaintiffs and Class Counsel do not satisfy the Adequacy Requirement under Rule 23(a)(4) and this raises two questions: "(1) whether the class counsel are qualified, experienced and generally able to conduct the litigation and (2) whether the class members have interests that are antagonistic to the other class members." Beattie v. CenturyTel, Inc., 234 F.R.D. 160, 169 (E.D. Mich. 2006) (quoting Stout v. J.D. Byrider , 228 F.3d 709, 717 (6thCir. 2000)).

"This requirement encompasses two distinct inquiries designed to protect the interests of absentee class members: [first,] it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees'[;] and [second] it tests the qualifications of the counsel to represent the class." *In re Gen. Motors*, 55 F.3d at 800 (citations omitted). "Adequacy" is especially important in classes certified for settlement purposes because "collusion, inadequate prosecution, and attorney inexperience are the paramount concerns in precertification settlements." *In re Gen. Motors*, 55 F.3d at 795 (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). The second factor asks the court to determine whether "the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation." *Wetzel*, 508 F.2d at 247. This proposed settlement with a dozen plus major errors, including fee fraud, is not reflective of experienced, qualified, knowledgeable and capable counsel representing the class's best interests. They represent their own selfish interests first. The evidence proves in this case

that the 3 million class members were intentionally sold a leaking canoe for a perilous trip down an extreme Class 5 rapids filled river, all for their money first. The absence of conflicts is a central tenet of adequacy, and it applies to both representative plaintiffs and class counsel. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."); *McCrary v. Elations Co.*, 2014 U.S. Dist. LEXIS 8443, at *36 (C.D. Cal. Jan. 13, 2014) ("The adequacy inquiry turns on . . . whether the named plaintiff and class counsel have any conflicts of interest with other class members[.]").

2. When calculating a cross-check that uses the percentage of recovery method, did the district court err as a matter of law by ignoring the appellant's detailed calculation breakdown of the inflated lodestar when he used the 2014 State Bar of Michigan Economics of Law Practice Survey which this district and possibly this circuit have used and approved of that shows an exorbitant $5 million overcharge to the class in hourly rates alone making the district's court percentage of fund award an error? All the work and evidence accumulated was ignored and not addressed by the district court. Generally, a reasonable hourly rate is calculated by reference to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x. 498, 501-02 (6th Cir. 2006), " *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 948 (E.D. Mich.)

3. The Federal Rules of Civil Procedure further require, upon the successful negotiation of a proposed settlement, that notice be given "in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1). The Due Process Clause requires that notice be "reasonably calculated to reach potential class members." *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 216 F.R.D. 197, 203 (D.Me.2003); *see also Eisen v. Carlisle & Jacquelin,*417 U.S. 156, 174, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.,*339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Does the rule above also require implicitly that the website that class members are referred to in the notice postcard in this case (that failed to tell them this was just a summary)should not contain materially inaccurate, missing and misleading settlement and claims information and if it does contain theses errors does that violate Rule 23(e)1?

**Standard of Review:**

Questions of law about the interpretation of the Federal Rules of Civil Procedure are reviewed *de novo. Kalamazoo v. River Study Group v. Rockwell Intern. Corp.*, 355 F.3d 574, 583 (6th Cir. 2004)

A district court decision to approve a class action settlement is reviewed for abuse of discretion. *Dry Max Pampers,* 724 F.3d at 717. A failure to apply the correct law is an abuse of discretion. *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997). An attorneys' fees

award is reviewed for abuse of discretion. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th

Cir. 1996).

"'An abuse of discretion exists when the district court applies the wrong legal standard,

misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'"

Geier v. Sundquist, 372 F.3d 784, 789–90 (6th Cir. 2004) (quoting First Tech. Safety

Sys., Inc. v. Depinet , 11 F.3d 641, 647 (6th Cir. 1993)). We may also find an abuse of

discretion when we are "'firmly convinced that a mistake has been made.'" Adcock-

Ladd v. Sec'y of Treasury , 227 F.3d 343, 349 (6th Cir. 2000) (quoting Graham-

Humphreys v. Memphis Brooks Museum of Art, Inc. , 209 F.3d 552, 560 (6th Cir.

2000)). See *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997) (failure to adhere to

proper legal standards is abuse of discretion). Judicial bias is structural error that can

never be found harmless. Wallace v. Bell,387 F.Supp. 2 d 728, 738 (ED Mich 2005)

citing Chapman v. California,386 US 18, 23 n.8 (1967)Dkt. 163 pg 183-184.

The Court of Appeals for the Sixth Circuit has set forth five elements of fraud upon the

court which consist of conduct: "1. On the part of an officer of the court; 2. That is

directed to the 'judicial machinery' itself; 3. That is intentionally false, willfully blind to

the truth, or is in reckless disregard for the truth; 4. That is a positive averment or is

concealment when one is under a duty to disclose; 5. That deceives the court."

Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993). Dkt. 163, Pg 184.

Misconduct, abuse of discretion and fraud on the court is clear, convincing and has occurred throughout this entire settlement based on the evidence below. The above cases are incorporated into the evidence below along with the Addendum of Designations of Relevant District Court Documents and the Appendix.

## Statement of the Case

### A. The lawsuit.

The United States of America and the State of Michigan (collectively, the Government) (Plaintiff) sued Blue Cross Blue Shield of Michigan (BCBSM) (Defendant) on October 18, 2010 case no. 2:10-cv-14155. The suit claimed that the company violated federal and state antimonopoly laws by establishing MFN's (most favored nation) clauses in its agreements with various hospitals which required those hospitals to raise rates to the defendant's competitors to as much as BCBSM was charging resulting in unnecessary overcharges to those who were now forced to artificially overpay for services due to this antitrust behavior by defendant. Dkt. 163 #2 (Exhibit B).

The government settled its complaint against the defendant when the State of Michigan passed a law on March 18, 2013 banning the use of MFN's resulting in a stipulated motion to dismiss on March 25, 2013 by the district court. The parties conferred and agreed that the injunctive relief sought by the United States of America and State of Michigan against Blue Cross Blue Shield of Michigan was now unnecessary in light of

the enactment of 2013 P.A. 5 and 2013 P.A. 6, and the Commissioner's order. The order was granted. See Appendix, attached Exhibit 1.

The Shane Group and Bradley Vandenberg brought a class action lawsuit against BCBSM on behalf of itself and all others similarly situated eleven days after the government filed it's complaint on October 29, 2010 which was taken word for word, all 80 paragraphs of it, from the government's complaint after the government spent a year of extensive research and investigation uncovering and preparing the evidence before filing suit against the defendant.Dkt.1

The amended complaint was filed by the plaintiff's twenty months later on June 12, 2012 which was a 95% copy of the original complaint which is a mirror image of the government's complaint paragraph by paragraph. Dkt. 72

The amended complaint claimed that Blue Cross Blue Shield of Michigan (aka BCBSM) engaged in a antitrust violations described above and thus violated the Sherman and Clayton Acts and a state law as described in that complaint.  One similar action was filed on February 21, 2011 City of Pontiac vs BCBSM, Docket 15, and was dismissed by this district court judge thirteen months later on March 30, 2012 because the complaint was legally flawed, Dkt. 172.  Incredibly the district court still awarded this one firm representing the City of Pontiac $700,000.00 plus expenses three years later for its failed bid, costing the class a material amount of money, Dkt.163 Pg 207. Non class members

and law firms who are improper parties have no right to represent the class and are not entitled to take fees and expenses from the settlement fund. Eighteen law firms appear to claim representation and "busy work" on behalf of what turned out to be numerous invalid named plaintiffs (80%) leaving just one original named plaintiff, maybe, and two new invalid named plaintiffs in the end. Unless named plaintiffs can show evidence proving class membership and which law firm originally they retained a full award of fees and expenses for are not owed to any non parties.

## B. The Andrews Objection and Supplements

Christopher Andrews, a class member objected after reviewing the four documents that were on the website and many that were not and should have been, like the motion for attorney fees.  The appellant's records show that he paid for healthcare services at a general acute care hospital in Michigan between January 1, 2006 and June 23, 2014, and is a member of the settlement class therefore has standing to object to the settlement. He filed a claim for benefits which was received by the administrator on November 15, 2014 at 3:51 pm, under the November 16, 2014 deadline to make a claim for benefits, Dkt. 159.

## C. The fairness hearing.

The district court held a fairness hearing on November 12, 2014. transcript, Dkt.198. The district court instructed the appellant he had two minutes and to go first before the plaintiffs' presentation seeking approval was even made which the appellant objected to was required to go first but was granted five minutes.  The appellant spoke for only four

minutes and refused to use the last one minute held in reserve after plaintiffs' counsel

gave their presentation. The appellant realized something was horribly wrong when the

court failed to inquire with the appellant or class counsel about any of the dozen plus

written and documented material errors, omissions, inflated fees and expenses in the

filings and the glaring, can't miss fee fraud issue. The Mt. Everest size evidence in the

nine docket filings listed on page nine in this document provides evidence that is clear,

concise and plain as day that describe the failings in precise detail in this settlement from

A-Z. The nine docket entries by the appellant could constitute the script of a block

buster novel and movie, you can't make any of this up.

## D. The court approves the settlement and fee award.

139 days after the fairness hearing and after both sides filed additional supplements that

proved attorney fee fraud and collusion, the district court incredibly overruled all

objections and issued three documents on March 31, 2014, Opinion and Order

Regarding Fairness Hearing, Granting Motion for Attorneys' Fee, Reimbursement of

Expenses and Payment of Incentive Awards, Denying Motions to Intervene, Granting

Motion for Final Approval of Settlement and Plan of Allocation, Denying Motion to

Strike Sur-reply, and Denying Motions for Sanctions, Dkt. 213, 214, 215.

The lawyers got everything they asked for regardless of the evidence in the file. Andrews

filed a timely notice of appeal on April 28, 2015 Dkt 216. His appeal is one of three

filed.

## Summary of the Argument

This is the worst class action settlement ever proposed and approved in any U.S. district court, ever, based on the dozen plus material errors, omissions and misconduct contained within it along with inflated attorney fees, expenses and ghost promotion fee fraud issue. It is a colossal failure for the class but an undeserved windfall for class counsel, the handful of invalid class members/named plaintiffs and the defendant. The entire sordid history is in the filings made by the appellant as the evidence was uncovered along the way. The public trust has been violated because of fraud, deceit, misconduct and concealment in this case and should not be ignored and swept under the rug. The district court is supposed to interpret the law not intentionally ignore it for one party's benefit at the expense of another which occurred in this case.

Here are few examples out of the dozen plus documented in the appellants submissions that were ignored in this settlement and by any reasonable standard, one or two combined should have been cause for a rejection of this settlement under Rule 23 standards and applicable case law. We have twelve issues. Abuse of discretion has prevailed.

## Argument:

"The Amended complaint defines the class as January 1, 2007 to June 23, 2014 not January 1, 2006 to June 23, 2014 as stated in the claim form, the preliminary approval and final order and opinion. In addition, objectors believe that the statutes noted in the complaint and amended complaint may only allow the claim to go back four years from

the original complaint of October, 20, 2010, or the amended complaint June 12, 2012

but the claims and release window goes back nine months further than October 20, 2010

date in the original complaint. This could be a problem so it should be checked." Dkt.

163  Pg 39.

The original complaint had two named plaintiffs, The Shane Group and Bradley

Vaneberg  who turned out to be non class members, Dkt 1, pg 1. The amended

complaint lists the following alleged class members and named plaintiffs: The Shane

Group, Bradley Veneberg, Abatement Workers National health and Welfare Fund

("Abatement Workers") and Monroe Plumbers & Pipefitters Local 671 Welfare Fund

(Monroe Plumbers") Michigan Regional Counsel of Carpenters Employee Benefits fund

and Scott Steele,  Dkt 72 pg 1.

On June 17, 2013 Plaintiffs' Motion to Add and Drop Named Plaintiffs for the

proposed Class is filed with the district court. Class Counsel proposed dropping the

invalid class members which number 80% of the total number and adding on two new

named plaintiffs Ann Noah and Susan Baynard by motion thirty two months after the

initial complaint was filed. This means that the existing named class members, 80% of

them, and their lawyers who were supposed to be looking out for the class's best

interests from the start of the litigation to the end, were never valid class members

because they can't prove damages. If they were valid members their interests are

different then the class's and there should have been separate counsel representing each

group in the three class categories that make up the class members. Since the named

plaintiffs to be dropped cannot prove they have verifiable damages they are invalid class members. Based on the reading of Dkt. 124 pg 2 they presently are not legally part of the settlement class, can't file a claim against the fund for damages yet the settlement was still certified and invalid named as class representatives who were ultimately given $165,000.00 in class incentive awards when the district court approved the settlement. They are not entitled to class funds as non class members and neither are a large group of their lawyers. The court never ruled on this motion, Dkt. 124.

On June 23, 2014, three hundred and seventy days after filing the motion to add and drop named plaintiffs above, there is a motion filed for preliminary approval of settlement by the invalid named class members, the one original alleged class member and the two proposed new ones who haven't been officially added on yet, Dkt 148 and 149.

On June 26, 2014 while the motion to drop and add two new named plaintiffs has been pending for over a year, an order granting preliminary approval is given, Dkt. 151.

On July 3, 2014 the district court finally rules that the motion to drop 80% of the current non class named plaintiffs due to invalid class membership issues and add the two named plaintiffs is now moot allowing the existing non class members and two new non parties to allegedly represent the class's best interests because they approve and endorse the settlement. The approval of this settlement eventually pays $13.6 million in excessive fees, expenses and $165,000.00 in incentive awards when class funds are not owed to those non parties and firms, Dkt.153. "Rule 23 does not set forth a mere

pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes , 131 S. Ct. 2541, 2551 (2011). Further, "[c]lass certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." Cummings v.Connell , 316 F.3d 886, 896 (9th Cir. 2003) (citing Soc. Servs. Union, Local 535 v. County of Santa Clara , 609 F.2d 944, 948-49 (9th Cir. 1979)). Counsel intentionally failed to protect the class and put their fees first ahead of class damages violating Rule 23.

This un-ruled on motion left invalid class members as part of the litigation when they should have been dismissed along with the applicable law firms, in essence a quid pro quo gift to plaintiffs' counsel and the defendant. Appellant objected to adding on two new named plaintiffs so late in the game, Dkt. 163 pg 45. The district court, class counsel as well as plaintiffs' counsel all knew this was wrong yet all buried their heads in the sand and in essence said, "nothing to see hear please move along," all for the ill gotten fees, expenses and for the defendant to be let off the hook for $90 million in damages and the class an afterthought.  The only alleged valid class member left standing from the amended complaint in the end at the approval of the settlement is The Michigan Regional Council of Carpenters. (maybe)

How can a district court grant preliminary approval and final approval to a proposed settlement when everyone acknowledges that 80% of the named plaintiffs are invalid class members with no damages, award them $165,000.00 in incentive fees and full fees to lawyers who allegedly represented the best interests of 3 million class members? How can the law firms all cheat and collect millions from the class fund without any threat of penalty for successfully pulling this scheme off? The system is being gamed by all and this is clearly wrong. The "specter of collusion" is present when "'class counsels [are] allowed to prosecute an action and negotiate settlement terms without meaningful oversight by the class representative.'" Olden v. Gardner, 294 F. App'x 210, 219 (6th Cir. 2008) (quoting In re Cal. Micro Devices Sec. Litig., 168 F.R.D. 257, 262 (N.D. Cal. 1996)).

Next, here is the colossal failure of the notice plan under Rule 23. The claims administrator sent individualized notice by postcard to a total of approximately 3,000,000 individuals, Dkt. 169-4 #5, and 1412 entities but not one email was sent to those claimants when 2 million of the class members were the defendant's own customers who should have been just sent a check without having to file claim form. Just 30,000 claims were filed. (Dkt. 198 pg 66 bottom) with a maximum cap on reimbursement of damages of 3.5% for each claim submitted. https://www.michiganhospitalpaymentslitigation.com/Content/Documents/Long%20 Form%20Notice.pdf  # 7. This leaves 99% of the class with nothing due to a failed notice program.

On June 6, 2014 the district court approved the preliminary approval order and the

mailing of notice is as follows:

Plaintiffs shall cause the Settlement Administrator to send the Postcard Notice by first-
class mail, postmarked no later than 40 days after entry of this Order, to the Settlement
Class Members who can be identified from the names and addresses produced to
Plaintiffs by BCBSM, Priority Health and Aetna Inc. Plaintiffs shall cause all forms of
publication notice provided for in the Notice Plan to be completed no later than 45 days
after entry of this Order. Plaintiffs shall cause the Settlement Administrator to activate
the Settlement website and the mailing address, email address and toll free number by
which Settlement Class Members can communicate with the Settlement Administrator
no later than the date Notice is first mailed or published. (Dkt. 151 page 6).


"On August 4, 2014, 39 days after order entry a family member who also originally

objected to the settlement contacted the appellant by phone and advised that he had

received a first class postage paid postcard notifying him of the settlement.  The

appellant checked the website on August 4 2014 and again August 6, 2014 that all 3

million class members could have visited that was on the postcard notice and clicked on

"claim form –individual". The list of "hospitals" numbered seventy two (72) at the time.

The "hospitals" that were listed that the appellant and a family member were looking for

were NOT listed on the website so we assumed we were not part of the class. Other

objectors who's "hospitals" were on the list and paid for services were unhappy with the

settlement after this appellant explained what the settlement and claims process was

really about so an objection was started.

On August 14, 2014 the appellant was checking the website for additional information

and errors. The objector clicked on "Submit a Claim - Select Claim Click here to file a

Consumer Claim Form" for the second time and scrolled down to page 5. Low and behold the website claim form list was updated and created a few hours earlier and now additional names of new hospitals and clinics were listed. (so now we are part of the litigation.) The new additional institutions had risen 236% and now contained 170 names of "hospitals" "medical centers" and "healthcare centers" which are not all "hospitals" or "acute care hospitals" as defined in the notices. Class members differentiate "medical centers" and health care centers" from "hospitals" because the not all institutions provide the same services as an "acute care hospital" can. The date the page was updated is on bottom of each page under the number 08-CA8356. If it gets updated again the new date will be listed there.

When potential class members received their short notice postcard and checked the site within a few days after the mailing deadline via first class mail starting on August 04, 2014 they would not have found all applicable hospitals listed because the list at that point was short by 170 of all the hospitals, medical clinics and health care centers that eventually made up the entire list. In addition some class members who viewed the site were initially required to send in paid invoices with their claims causing a huge unknown number of class members to drop out of the process and never exercise their rights, by design after reading that. Counsel attempted to fix the intentional burdensome error but it's too late, the damage has already been done. Finally on or about August 14, 2014 the list was updated and dozens of new institutions were added", Dkt. 163 Pg 31-34. See also Dkt 163 pg 95 -101.

The claims administrator admits to leaving out a number of hospitals, medical clinics etc. after the mailing was completed and postcards had arrived in the mailboxes of class members. Since the mailing was completed by August 06, 2014 all 3 million class members would have missed the updated list just like that objector and this appellant did. Obviously 99% did not go back for a second look. This cataclysmic error caused approximately 2,990,970 class members not to submit a claim, only 30,000 did, hence the 1% response rate, a fatal failure to the settlement under Rule 23 and due process, Dkt 169-4 # 16. A "disparity in the relief afforded under the settlement to the named plaintiffs, on the one hand, and the unnamed class members, on the other hand, [makes] the settlement unfair." Vassalle v. Midland Funding LLC , 708 F.3d 747, 755 (6th Cir. 2013)  the settlement is not fair because it "benefits class counsel vastly more than it does the consumers who comprise the class." *Dry Max Pampers Litigation*, No. 11-4156, 2013 WL 3957060 (6th Cir. Aug. 2, 2013). Dkt. 163 pgs 84,85. But, Class counsel is still proud of the 1% result, because of the fees they are receiving,  Dkt 198 pg 12-22. Finally class counsel stated in the transcript that the website received "over a hundred thousand unique visitors" out of a possible three million unique visitors that comprise the class.

The following presentation was made in part by the same notice firm and person in this case, Ms. Wheatman, Dkt. 162-1 and 162-2 apply.

Pages 22 and 24 in the presentation below show this notice was a failure using Ms. Wheatman's own firm's numbers. On page 22, the response rate based on the claims

practice area, insurance, has a historical claims rate of between 5%-15%, or 100% to

1500% higher than it is in this case. In other words with 3 million class members and a

1% claims filed equaling 30,000 claims there should actually be between 150,000 and

450,000 total claims filed with the average being 300,000 claims received. The notice

administrator's own study is at Settlement Administration: Impacting Claims Filing Rates

(Feb. 18, 2014), available at:

  http://media.straffordpub.com/products/crafting-class-settlement-notice-
  programsdue-process-reach-claims-rates-and-more-2014-02-18/presentation.pdf

The claims result in this case vs. the above study proves and makes for defective notice

(see Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 641 (5th Cir. 2012)).


More evidence about the failed notice program is provided directly by 1100+class

members. A never before real time survey of class members reaction to receiving an 8

font, too small, hard to read, junk looking postcard notice about a health care class

action lawsuit they are in. The comments are spot on and prove the failure of the notice

program but class counsel and the district court do not see any problem with the

postcard and the result because of the fees and expenses they will reap if approved.

1100+ individual class members responded to a survey about receiving their short notice

postcard via a TV station's news report and Facebook page. The results reveal a

stunning spectacular failure of the notice program. Keep in mind there could be an

average of three people in each household. Three separate claims forms would have to

be filed because class counsel and the administrator required that each person, including children have a separate claim form filed, Dkt. 172 pgs 52-79, includes a picture of the postcard. Specifically page 56 last comment bottom of page regarding the children filing issue is worth noting.

Appellant objected to the plan of allocation Dkt. 163 pg 103 bottom, and the cy pres provision and anything to do with it, Dk. 163 pg 26.

In the plan of allocation class counsel wrote: "Any Category 3 funds not distributed to Claimants because of these restrictions will be distributed cy pres to Free Clinics of Michigana, as determined by the Court." Dkt 148-1, first two pages describe the rollover of funds from Category 1 than 2 into Category 3.

In the approval order the district court wrote: "Any payments in Category 3 which are too small to distribute will instead be made to the non-profit organization Free Clinics Of Michigan, a charity providing free health services throughout Michigan." Dkt. 213 page 34 bottom.

First of all "too small" is not defined so any amount from $1.00 to $100.00 that the district court deems is "too small" the checks won't go to the damaged class members but rather to a outside non party. There should be a specific dollar amount stated.

Second, the defendant donates to the cy pres recipient, Free Clinics Of Michigan (FCOM) as a major $1 million a year donor and partner. This is a de facto donation scheme. The online evidence is located here and existed as of June 15, 2015 at 8:53 pm. http://www.fcomi.org/partners.html Appellant includes a copy in the appendix

attached to this appeal, exhibit 2, two pages. Note at the top of the agenda page where the meeting is being held at, there is quid pro quo throughout this case.

The cy pres award ultimately benefits the defendant in the end because less claims filed the better and with a cap of 3.5% and two rollovers means huge amounts could end up and roll down into the cy pres fund and back to the defendant as a back door donation. The defendant can now donate less money next year or maybe for multiple years because of this kickback scheme they set involved in.

There is still no amount that was disclosed as to how much of the total net class fund that rolled into cy pres as of the final approval date and filing claims deadline even four months after the filing date ended. The amount in cy pres is not in the record. and because of the 3.5% cap on maximum reimbursement to each class member all of this makes for an unreasonable cy pres provision. If there is $15 million in the fund divided by 30,000 claimants is $500.00 each seems fair. But to qualify for that amount the each claimant would have to have spent out of pocket $14,500.00 based on the cap of $3.5%. This is highly unlikely with the left over balance rolling into the cy pres fund. All of this makes for an unreasonable cy pres provision and reversal of the approval. (See  (Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 24 (1st Cir. 2012)).

Next, the individual claim form states:

3. "I have read and agree to the Release in Paragraphs 58-59 of the Settlement Agreement."

The problem with that is the settlement agreement stops at page 29. Pages 30 to 101 are missing so claimants never saw the release on pages 58-59 and were tricked into agreeing to it, making the release invalid and settlement invalid, Dkt. 148-1. Class Counsel should have attached the release to the claim form for the class members to see, acknowledge and agree to as the appellant stated in the objection but they didn't. Dkt 163 pg 32. https://www.michiganhospitalpaymentslitigation.com/Content/Documents/Settlement %20Agreement.pdf  the part of 148-1 is still on the settlement website on June 21, 2015.


The district court wrote, "Class Counsel asserts the time submissions were reviewed to ensure that no person submitted time for unauthorized work." Docket 213. A false statement and evidence of substantial fee and hour fraud on the class via their fee petition that all parties making the district court's calculation of the fee award invalid because the lodestar amount referenced is a minimum of 34% too high on rates alone. Class counsel wrote in their motion for fees: (1) extensive work preparing the initial Complaints and the subsequent Consolidated Amended Complaint;…". Dkt. 155 pg. 2 top. Were thousands of hours in "extensive work" billed to the class unfairly? The initial complaint was a 100% copy of the government's complaint and the amended complaint was a 95% copy of the original complaint making the 18 sworn fee declarations and statement in the final papers false. Class counsel had a free roadmap provided by the U.S. taxpayer but class counsel and the district court gives them no credit for all their work. If there was no government litigation no complaint, no amended complaint, no

free evidence, no 165 depositions, no settlement, no inflated fees, hours, expenses, no ghost promotion fee fraud scheme. See Dkt. 163 pg 17 bottom, and attached documents 2, 3 and 4. This makes for unreasonable fees and expenses of counsel (see Union Asset Mgmt. Holding A.G., 669 F.3d at 642-45).

Class counsel did not state anywhere that this settlement was the product of good faith, not once, because they know it's not. Class Counsel did not state in the record that the fees and expenses were negotiated after the settlement was made with the defendant. The appellant states that the clear, convincing and overwhelming evidence, some of which is beyond a reasonable doubt in the record he discovered proves that the attorney fees, unseen expenses and incentive awards were made **before** the settlement terms were consummated for the class netting class counsel a $13.5 million windfall first, then saving the defendant $90 million second, and then the class damages were figured out last. This is example of the class's best interests taking a back seat once again to the class counsels' greed in this fee and defendant driven settlement.

Disproportionate allocation violates Rule 23(e) even without a showing of actual collusion which is present in this case along with bad faith misconduct fee inflation and a fee fraud scheme as shown below:

The appellant wrote in the objection, "The objector states that the "expert's" unseen alleged invoice of $2.5 million may not be based on any economic reality. The total alleged unseen invoice of $2.5 million was incurred by Plaintiffs' Counsel on behalf of

the class over a maximum of 22 months and maybe less, (the date the amended

complaint was filed to settlement). On a monthly basis it's equal to $113,636.00 incurred

per month for twenty two straight months. Broken down further it is $28,409.00 per

week, based on a five day week is $5,681.00 per day. Based on an eight hour day it is

equal to $710.00 per hour. Take 40 hours a week multiplied by 22 months is 3520 hours

x $710.00 an hour is the $2,499,200.00 invoice Plaintiffs' Counsel, the "expert" and

named plaintiffs' all want the class and the Court to believe was reasonable and

necessary for this result. False. Prove it counsel. They have chosen not to in their final

papers nor are there any documents for the class to see and review," from Dkt. 172 pgs

16-17.5. No receipts from the expert were ever shown to anyone outside class counsel,

and no methodology has been shown to justify this invoice to the class. Class Counsel

chose to provide only a brief summary of a small part of the other $1 million in expenses

that the objector deconstructed to show how excessive and questionable many of those

partial expenses claimed really are. The class, appellant and even the district court are

blissfully unaware of the expert's $2.5 million fee methodology so those receipts may

also be intentionally bloated and fraudulent just like the attorney fee rate, hours and

ghost promotion fraud scheme are. Some of the non expert expenses were summarized

and reviewed by the appellant and some of them raise huge red flags, Dkt.163 pgs 158-

164. Class counsel's motion for attorney's fees and the proposed order were NOT put

on the website for the class to view, comment on and possibly object to reducing the

number of potential objectors in this case until long after the fact. The motion on there

now was added after the objection window closed if memory serves the appellant correctly.

Class Counsel falsely swore that its lodestar was $15,500,000.00 and an alleged discounted request for an award of attorney fees of one-third of the Settlement Fund, or $9,996,667 plus interest was requested and granted. Their total litigation expense of $3,499,893.02 is false, Dkt 155 page 7 of 31 top of page. Even though the fee is less than the proven artificially inflated lodestar it does not make it reasonable when it exceeds class recovery in this settlement. Generally, a reasonable hourly rate is calculated by reference to the prevailing market rates in the relevant community,. *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). See see Dkt 163 document 6 for the rate guide used.

A large number of law firms submitted, under penalty of perjury, false and fraudulent attorney fees petitions to the court totaling millions of dollars. Dkt 155. The evidence of the $5 million in the inflation scheme in hourly rates is Dkt. 163 pgs 146-148, 191, 195-220  Dkt. 204 pgs 2-5,  Dkt. 206, entire document, Dkt. 207 pg 6.

 Dkt. 209 and Dkt. 210 pgs 1-12 shows the actual misconduct issue for each applicable firm and in particular the "ghost promotion" scheme. One firm for example billed the class $200,000.00 for an "Of Counsel's" work for someone who is not a lawyer and is in fact a ten year, full time technology manager employee, contract attorneys billed as partners, firms sharing attorneys with different titles in different states, etc are more

examples of fraud. Class Counsel also writes falsely under penalty of perjury by incredibly trying to justify the incentive awards to the invalid named plaintiffs which they know are not valid class members, Dkt. 155 pgs 20-23. Examples of fraudulent greed goes on and on with half the firms. The total fee fraud is approximately $1.4 million in disputed billings for all counsel. Numerous counsels have greed problems in other cases Dkt. 163 pgs 36-51. A settlement designed to make class counsel the primary beneficiary—and where class counsel *is* the primary beneficiary—is *per se* unfair under Rule 23(e); in the alternative, it demonstrates a lack of adequacy under Rules 23(a)(4) and (g)(4). The legal work that was performed, including fees, was excessive, duplicative, unnecessary, unproductive, inefficient, redundant, and wrong which materially cheats the class and violated Rules of Professional Conduct.

The appellant requested the following be addressed and were not. This from the objection: "Did any law firm in this litigation agree to percentage recovery amount or a fee cap for any work performed in this case or expenses incurred"? "Was there anything "understood" that would cause the fee to be less than what is being requested? Let's hear/see it". Dkt. 163 pg 126 bottom. That also includes the "expert's fee of $2.5 million. The appellant asked for retainer agreements, none were provided, Dkt 163 pg 179. It is very possible that the "expert' fee" of $2.5 million that was incurred might end up false because maybe any balance owed may be based on full award and if only a partial reimbursement is awarded the remainder may be "forgiven". This is something

that the district court should have inquired about at the fairness hearing before rushing through with an approval.

The district court apparently failed to review the Sanction Motion before ruling on it because all the evidence up to the approval date shows that the ruling denying sanctions was in clearly an error and clearly an abuse of discretion, Dkt. 204 is the sanction motion, Dkt. 213 pg 48 is the opinion ruling.

Defendant failed to include the following in the stipulation of release dated June 23, 2014 Dkt. 148-1 making all the evidence discovered by the appellant up until the day of the decision (March 31, 2015) applicable, (not just to June 23, 2014, the stipulation agreement date) so it should have been disclosed to the entire class prior to a court's ruling which it wasn't. This cheats the class of valuable information when making their decision about what to do with their claim, submit one, opt out, object, file suit etc. "Plaintiffs' Counsel and defendant failed to include the following in the release: "Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph." Dkt. 172 pgs 33-34.

Applicable Class Counsel broke attorney client privilege and/or secrecy pledge four times with the appellant. They are untrustworthy and engaged in misconduct that

violated Rules of Professional Conduct. Dkt. 172 pages 5-11. Counsel also disclosed the real amount they would be happy with in exchange for the appellant to "endorse the settlement" which the district court refused to inquire about at the fairness hearing which was far less than they were awarded. Their fee is all a magic act with backed in numbers to arrive at the real amount after their "discount".

The $1.0 million plus paid to date to the settlement administrator plus an unknown remaining amount for processing just 30,000 claims is not a class benefit and should not have been counted as a class benefit when calculating the attorney fee amount awarded.

Finally, the parties failed to exclude from the settlement the two judges that were/are involved in this case. The exclusion is not mentioned in the postcard notice, long notice, settlement release and approval order. This is a conflict of interest, which after all of the above evidence to date should void the settlement. This is just another example out of a mountain of material errors, misrepresentations and fraud in this settlement.

**Conclusion**

The district court committed a myriad of independent errors of law, which require reversal of the settlement approval and remand for consideration under the correct standards of law. The Court should order the following and/or give instructions for the following: fix all the material errors the appellant has pointed out, order the long notice be re-mailed with changes, remove non class members as named plaintiffs, remove of all

unethical class counsel for misconduct without any fees or expenses due to the mirayd of errors throughout this settlement that clearly prove they were not, are not and never will be adequate and fit to represent the class and it's best interests going forward. The fee and hour inflation, fee fraud and misconduct engaged by class counsel against the best interests of the class require for cancellation of their fees and expenses. The balance of plaintiffs' counsel that engaged in the ghost promotion scheme that overcharged the class should also be terminated without fees or costs. The misconduct in this case severely impacted this settlement to the detriment of the class. The district court and class counsel see nothing wrong with the issues written about above. Does this look like a fair, reasonable and adequate settlement that should be approved under Rule 23 and applicable case law with all the material issues and errors still contained within it? As stated earlier, this is the worst class action settlement ever filed and approved in any U.S. District Court and the appellant needs your approval to fix this disgraceful settlement.

I certify that all of the above is true and accurate to the best of my knowledge.

June 22, 2015

Respectfully Submitted,

Christopher Andrews
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Email caaloa@gmail.com
Pro se Appellant

## Certificate of Compliance with Fed. R. App. Proc. 32(a)(7)(C)

This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B)

because this brief contains 30 pages and 9733 words, excluding the parts of the brief

exempted by Fed. R. App. 32(a)(7)(B)(iii), as counted by Microsoft Word 2007.

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and

the type style requirements of Fed. R. App. 32(a)(6) because this brief has been

prepared in a proportionally spaced typeface using Microsoft Word 2010

in 14-point Garamond font.

Executed on June 22, 2015

Christopher Andrews

## Proof of Service

I hereby certify that on June 22, 2015, I sent by USPS Next Day Air this document and

the two attachments to the Clerk of the United States Court of Appeals for the Sixth

Circuit and sent copies to counsel of record via first class mail.

Executed on June 22, 2015.

Christopher Andrews
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Email: caaloa@gmail.com
Pro se Appellant

## Addendum of Designations of Relevant District Court Documents

As 6th Cir. R. 30(f)(1) requires, Andrews designates the following district court documents as relevant to this appeal:

Dkt. 1 Complaint filed by The Shane Group, Inc., Bradley A. Veneberg against Blue Cross Blue Shield of Michigan, entire document.

Dkt. 72 Amended complaint pg 1 showing additional named plaintiffs, pg 21.

Dkt.124 Motion (Plaintiffs' Motion To Add and Drop Named Plaintiffs for The Proposed Class,) pg *2.*

Dkt. 148 Notice by All Plaintiffs of Hearing on Plaintiffs' Unopposed Motion for Preliminary Approval Of Settlement , Certification of Settlement Class and Related Relief, pg 1.

Dkt. 148-1 same as above with attachment first two pages and pg 30.

Dkt. 149 Notice by All Plaintiffs of Hearing on Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Class, and Related Relief, pg 30.

Dkt. 153 Order Mooting Motions 124 , 133 and 140 , entire document, pg 22.

Dkt. 155 Motion for Attorney Fees Reimbursement of Expenses, and Payment of Incentive Awards to Class Representatives by All Plaintiffs, Pgs 7, top, 20-23.

Dkt. 159 Objection to Proposed Class Action Settlement, entire document pgs 9, 18.

Dkt. 161-1 Notice by All Plaintiffs Regarding Effectuation of Notice Plan, entire doc.

Dkt. 162-1 Notice by All Plaintiffs Regarding Effectuation of Notice Plan entire doc. Pg 27.

Dkt. 162-2 Notice by All Plaintiffs Regarding Effectuation of Notice Plan entire doc. Pg 27

Dkt. 163 Objection to settlement by Christopher Andrews entire document and Pgs 9,17,21,23,26,28,30,31,33,34,35, 36-51,183-184.

Dkt. 163-2 same as above with attachment, entire document pg 16.

Dkt. 163-4 same as above with attachment entire document, pg 27.

Dkt. 163-6 same as above with attachment entire document, pg 34.

Dkt. 169-4 Motion for Final approval of Settlement and Plan of Allocation, #16, pg 16.

Dkt 172 Sur Reply, balance of proof of class membership for objector's, breach of attorney client privilege by counsel in their final submission papers, entire doc. and specifically pgs 33-34, 52-79, pg 56 bottom.

Dkt. 198 Transcript of Motions Hearing (TheFairness Hearing Transcript) pgs 37-42, pg 66 bottom.

Dkt. 206 Response to Corrected 203 document,  entire document and specifically pg 34.

Dkt. 210 Supplement to 163 Objection 205 Motion for Sanctions filed by Christopher Andrews, entire doc, pgs 9, 34

Dkt. 213 Opinion and Order Regarding Fairness Hearing, Granting Motion for Attorneys' Fees, Reimbursement of Expenses and Payment of Incentive Awards, Denying Motions to Intervene, Granting Motion for Final Approval of Settlement and Plan Allocation, Denying Motion to Strike Sur-Reply, and Denying Motions for Sanctions, entire document. Pgs 19,29,31,35

Dkt. 214 Order Approving Settlement. Entire document, pg 9.

Dkt. 215 Final Judgment. Entire document, pgs 9,18

Dkt. 216 Notice of appeal by Christopher Andrews re 213 Opinion and order, 214 Order, and 215 Final judgment, entire document, entire document, pgs 9,19.

# APPENDIX

Exhibit 1, U.S. Government Stipulation To Dismiss Their Complaint, four pages…...16

Exhibit 2, Free Clinics Of Michigan/Blue Cross Blue Shield Connection Document, two pages…………………………………………………………………...…29

EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF MICHIGAN, | |
| Plaintiffs, | Civil Action No. 2:10-cv-14155-DPH-MKM |
| v. | Hon. Denise Page Hood Mag. Judge Mona K. Majzoub |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, a Michigan nonprofit healthcare corporation, | |
| Defendant. | |

STIPULATED MOTION AND BRIEF
TO DISMISS WITHOUT PREJUDICE

On March 18, 2013, the State of Michigan enacted laws (2013 P.A. 5 and 2013 P.A. 6) that ban the use of most favored nation clauses by insurers, health maintenance organizations, and nonprofit health care corporations in contracts with providers. Specifically, beginning January 1, 2014, those laws will prohibit the use of most favored nation clauses by health insurers, health maintenance organizations, health care corporations, and any other entities providing health insurance in provider contracts, and that prohibition will prevent defendant Blue Cross Blue Shield of Michigan and its subsidiary Blue Care Network (a health maintenance organization) from using the most favored nation clauses challenged in this action, or other most favored nation clauses

with hospitals in Michigan. The prohibition on MFNs will apply whether Blue Cross is organized as a nonprofit health care corporation, a health insurer, a health maintenance organization, a nonprofit mutual disability insurer, or any other entity.

In the interim, the Commissioner of the Michigan Office of Financial and Insurance Regulation has ordered that no insurer may use MFNs unless the MFN is submitted to and approved by the Commissioner. On February 8, 2013, the Commissioner issued Bulletin 2013-04-INS, stating that "all MFNs currently in use by any insurer are void and unenforceable" as of February 1, 2013, and that "any attempt by an insurer to use or enforce an MFN clause in any provider contract, without the Commissioner's prior review and approval, is prohibited . . . ." Blue Cross has acknowledged that the Commissioner's Order No. 12-035-M makes Blue Cross's MFN clauses void and ineffective.

The parties have conferred and agree that the injunctive relief sought by the United States of America and State of Michigan against Blue Cross Blue Shield of Michigan is now unnecessary in light of the enactment of 2013 P.A. 5 and 2013 P.A. 6, and the Commissioner's order.

2

Therefore, the parties respectfully move the Court, pursuant to Fed. R. Civ. P. 41(a)(2), for an order in the form attached, dismissing the action without prejudice and without costs to any party.[1]

Consented to by:

/s/ Ryan Danks
Trial Attorney
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W.
Washington, D.C. 20530
(202) 305-0128
ryan.danks@usdoj.gov
Attorney for Plaintiff
United States of America

/s/ with consent D. Bruce Hoffman
HUNTON & WILLIAMS LLP
2200 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 955-1500
bhoffman@hunton.com
tstenerson@hunton.com
Attorneys for Defendant
Blue Cross Blue Shield of Michigan

/s/ with consent M. Elizabeth Lippitt
Assistant Attorney General (P-69868)
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48933
(517) 373-1160
lippittE@michigan.gov
Attorney for Plaintiff State of Michigan

---

[1] Blue Cross notes that there is one pending discovery motion filed in this action by non-parties, the motion to quash filed by Joseph T. Aoun et al. (Docket No. 226). That motion relates to a subpoena served by Blue Cross in this action and applicable to all related actions pursuant to the Court's prior orders coordinating discovery, and also to cross-notices by the Shane Plaintiffs. It is fully briefed, with responses filed in all three actions and a reply filed in this action. The dismissal of this action does not moot that motion, which should be treated as having been filed in all three actions.

## CERTIFICATE OF SERVICE

I hereby certify that on the date inscribed above, I filed the

foregoing via the Electric Case Filing system in the United States

District Court for the Eastern District of Michigan, and that the

CM/ECF system will send a notification of such filing to all counsel of

record.

/s/ Ryan Danks
Ryan Danks

4

*EXHIBIT "2"*



- Copied off of website June 19, 2015, first two pages only link at http://www.fcomi.org/partners.html
- HOME
- About Us
- Find a Clinic
- Member Resources
- Partners
- Contact
- Donate

## AmeriCares

AmeriCares
A Passion to Help. The Ability to Deliver.

AmeriCares is a nonprofit disaster relief and humanitarian aid organization which provides immediate response to emergency medical needs – and supports long-term humanitarian assistance programs – for all people around the world, irrespective of race, creed or political persuasion.

## BCSBM



Blue Cross
Blue Shield
of Michigan

Blues grants totaling $1 million each year help Michigan's free clinics provide health care services to more than 100,000 of the most vulnerable residents in our communities.

*PAGE 1 OF 2*

 **FCOM** Free Clinics Of Michigan

# Annual Membership Meeting
Friday May 1, 2015, 10:00am – 3:00pm
BCBSM Lyon Meadows Conference Center (font increase by appellant)

9:30    Registration and Lunch – $15.00 each
        You can pay your 2015 dues also at the Registration Desk – $200/clinic

10:00   Call to Order
        Introduction of the Board of Directors
        *Presented by Mary Ellen Howard, FCOM President (St. Frances Cabrini Clinic)*
        **Approval of the 2014 Annual Meeting Minutes**
        *Presented by Rich Samartino, Administrator, FCOM*
        **Treasurer's Report – Importance to FCOM of paying your 2015 dues**
        *Presented by Karen Kaashoek, FCOM Treasurer (Catherine's Health Center)*
        **Nomination Process – At the end of 2015, terms expire for the following board members:**
        - Mary Ellen Howard, end of term as President and board member.
        - Barb Grinwis, end of term as VP/Chair Elect and board member
        - Joyce Hardy, end of term as board member
        - Steve Hammond, end of term as board member
        Nominations will be accepted for new members. A ballot will be mailed to each member clinic
        in the fall for new 3-year terms of office, effective Jan. 1, 2016.

10:30   **Legislative Update** – the future of ACA and Healthy Michigan. Impact on and Involvement of
        FCOM – *Phil Bergquist and Ryan Grinnell, Michigan Primary Care Association.* Q&A

11:30   **Report on the Safety Net** – Status of Free Clinics – *Claire Peters of Center for Healthcare
        Research and Transformation, Ann Arbor*

12:00   **Lunch and Round Robin Sharing:**
        Free Clinic Representatives – 5 min for one rep from each clinic:
        *Moderated by Barb Grinwis, Vice Chair FCOM Board (Oasis of Hope Center, GR)*
        - How is enrollment going at your clinic? Are patients finding PCPs who will accept Healthy
          Michigan?
        - How has ACA affected your census? Your ability to retain volunteers, and to raise funds?
        - What is your experience using the Indigent Drug Programs of the pharmaceutical companies?
        - What other effects is your clinic experiencing from the ACA?
        - Are you accepting Medicaid? Are you considering accepting Medicaid?
        - Tell us about your creative responses to the changes ACA has brought.

1:30    **Breakout Sessions:**
        A.      Patient Education re Insurance 101 – Kelly Herron of Cabrini Clinic, Detroit. Kelly has
        developed a powerpoint presentation which clinics can use to help their patients learn how to make
        good use of their new insurance.
        B.      Integrated Health Care Model – Barb Grinwis of Oasis of Hope Center, GR, will share a
        model clinical program which integrates physical, spiritual, and mental health services.
        C.      ALICE Report on Poverty in Michigan – Mary Ellen Howard will present a September
        2014 report by United Ways of Michigan which county by county identifies what level of income is
        necessary to meet basic needs.

2:30    Wrap-up – *Mary Ellen Howard, FCOM President*
        Adjournment

$\int$ of $\int$

  
JUL 1 0 2015

July 07, 2015

**DEBORAH S. HUNT, Clerk**

To: Clerk of the Court

Please docket this duplicate copy of the original appellant's brief (Docket 12) as "More Legible Copy of

Appellant's Brief". The original copy has smudges and printing errors making it difficult to read with

some words completely obliterated due to errors in the printing and mailing process. Thanks!

Chris Andrews

## Proof of Service

I hereby certify that on July 07, 2015 I sent by USPS First Class Mail this duplicate

document and the two attachments to the Clerk of the United States Court of Appeals

for the Sixth Circuit and sent copies to counsel of record via first class mail.

Executed on July 07, 2015

Christopher Andrews
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Email: caaloa@gmail.com
Pro se Appellant



her Andrews
530394
, MI 48153

United States Court of Appeals
    For the Sixth Circuit
100 East fifth Street Room 540
Cincinnati, Ohio 45202-3988