IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
No. 15-1544

RECEIVED

OCT − 7 2015

DEBORAH S. HUNT, Clerk

THE SHANE GROUP, INC., et, al.,

Plaintiffs-Appellees,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN

Defendant-Appellee,

Appeal of Christopher Andrews,

Objector-Appellant

On Appeal from the United States District Court
For the Eastern District of Michigan, 2:10-cv-14360-DPH-MKM,
Judge Denise Page Hood

### **Reply Brief Of Appellant Christopher Andrews**

Christopher Andrews
PO Box 530394
Livonia, MI 48153
248-635-3810
Caaloa@gmail.com
Pro se, non attorney

RECEIVED

OCT - 7 2015

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
## and Financial Interest

Sixth Circuit
Case Number: 15-1544 ___     Case Name: Shane Group Inc.v. Blue Cross

Name of counsel: Not applicable ___

Pursuant to 6th Cir. R. 26.1, Christopher Andrews ___
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.

   NO

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   NO

---

### CERTIFICATE OF SERVICE

I certify that on ___ October 05, 2015 ___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ *[signature]*

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## <u>Table Of Contents</u>

Introduction…………………………………………………………………...6

Argument ……………………………………………………….…………...6

Smoking Gun Discovery Makes The Approval And Appellees Brief's Invalid ….……6

Conflicted Named Plaintiffs Void The Settlement And Approval ..……………..……...8

Fee Shenanigans By Liaison And Class Counsel Voids The Approval……………..11

Clear Predisposition, Bias And The Appearance Of Impropriety By The Court…..….13

Request For Reassignment…………..…………………………………..…..…..17

The Unavoidable Conclusion And Request For Relief..……..……………..……...19

## Table of Authorities

Addock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 349 (6th Cir.2000) (quoting

Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir.

2000)............................................................................................... 11

Geir v. Sundquist, 372 F.3d 784, 789–90 (6th Cir. 2004) (quoting First Tech, Safety

Sys.,v. Depinet, 11 F.3d 641, 647 (6th Cir. 1993))...........................................11

Howe v. City of Akron No.14-3352 (6th Cir.2015)..........................................18

Hansberry v. Lee , 311 U.S. 32, 42 (1940)....................................................10

Huey v. Stine, 230 F.3d 226, 228 (6th Cir.2000))...........................................11

John B. v. Goetz , 626 F.3d 356, 364 (6th Cir. 2010).......................................18

Lowery v. City of Albuquerque , 273 F.R.D. 668, 68 0 (D.N.M. 2011); see also Lile

v. Simmons ,143 F.Supp.2d 1267, 1277 (D.Kan.2001).....................................10

Renal Care Grp., 696 F.3d at 532. 696 F.3d 518 (6th Cir. 2012).........................18

Rorrer, 743 F.3d at 1050.........................................................................18

Smith v. Anderson, 402 F.3d 718, 727 (6th Cir. 2005)......................................8

Solomon v. United States, 467 F.3d 928, 935 (6th Cir. 2006))............................18

Thompson v. Bell, 373F.3d 688, 690-91 (6th Cir. 2004)....................................8

United States v. Gapinski, 422 Fed.Appx. 513,522 6th Cir.2011).......................18

United States v. Hagby , 20 F. App'x 299, 300 (6th Cir. 2001)..........................18

United States v. Haywood, 280 F.3d 715, 720 (6th Cir.2002) ............................11

Villegas v. Metro. Gov't of Nashville , 709 F.3d 563, 580 (6th Cir. 2013)…..…..…..17

Walmart Stores, Inc. v. Dukes , 131 S. Ct. 2541, 2551 (2011)………………………9

Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 851 (6th

Cir. 2013) …………………………………………………………………..9

Williams v. Renal Care Grp., Inc., 696 F.3d 518, 532–33 (6th Cir. 2012)..………....18

Williams v. Vukovich720 F.2d at 922-23.(6th Circuit 1983)………………………..10

## Rules, Regulations and Statutes

Rule 23……………………………………………………….......9,13

Rule 23(a) (4)…………………………………………...…..……..10

Rule 23(e).…………………………………………………..……..19

Rule 23 (e) 2…………………………………………………….:10

Rule 23(g)(1)(a)and(b)……………………………..…………10

Rule 23(g)(2)…………………………………………………10

Rule 23(g) (1-4)……………………………………………...10, 19

Rule 23(h).…………………………………………………... 13,19

18 U.S.C. Code §1746 ….…………………………………………16

## Introduction

Appellees are scared of oral argument and do not want to answer questions about their roles and actions in this case. They also concealed knowledge of great importance that should have been disclosed years ago to the class and/or in their briefs so this intentional omission violates their duty of candor to the Court. This Appellant is banging on the lectern requesting that oral argument be granted, the parties ordered to attend, explain "who knew what, when" based on the contents in his brief and this reply brief. This scandal should be known as "Lawyergate".

## Argument

### Smoking Gun Discovery Makes The Approval And Appellees Brief's Invalid

After the district court gave approval to the settlement this Appellant engaged in extensive research to find out the "why" and made a sensational "smoking gun" discovery which was passed on to all Appellees for answers but no response was received. Typically this discovery can't be included in the appeal (as this Appellant understands the rules) since this finding was uncovered after the judgment was entered. An exception to this rule is requested based on this remarkable finding.

The $30 million settlement, approval and Appellees briefs are all a charade because various parties already knew about this astounding information and kept it secret for FIVE years which insured a prejudicial outcome against the class's best interests. The finding contradicts the statements, claims, filings and declarations made verbally and

in writing by Liaison Counsel, Class Counsel, Blue Cross Blue Shield of Michigan (Dkt. 171) and the district court's own findings, rulings, opinions and orders that the deal is fair, adequate and reasonable under all sections of Rule 23. Concealing this information has unequivocally prejudiced this deal by dramatically subverting the litigation resulting in negotiated settlement terms that are far, far worse for class members than the terms that would have been negotiated absent the concealment.

All the Appellees are now using their ongoing tried and true art form of "deception by omission" by arguing in bad faith to obtain confirmation of the district court's decision despite knowing the indisputable evidence this Appellant gave them contradicts their own briefs! Their briefs in essence say they do not believe that candor to this Court trumps the agreement they have between them to get this deal done at all costs. The end result is millions of class members are tricked into an unscrupulous settlement and approval. This discovery also impacts the $2 billion Aetna vs. Blue Cross Blue Shield sister case that settled after this approval. This Appellant spoke with Aetna lawyers regarding his finding. This same amazing finding applied to their case but apparently was never disclosed to them either, uh-oh.

The question now is should this incredible finding be supplemented to the record in response to Appellees intentional failure to disclose their knowledge of this information during the case and in their briefs which makes the adequacy of the settlement and their two filings an intentional perversion of the truth?

This Court has "inherent equitable authority to supplement the record" under powers

it possesses but rarely exercises it. The Court in the habeas context has exercised its

equitable authority to supplement the record in two capital cases with evidence as to a

petitioner's mental condition at the time of the crime. See Thompson v. Bell, 373F.3d

688, 690-91 (6th Cir. 2004) and Smith v. Anderson, 402 F.3d 718, 727 (6th Cir.

2005.) This finding has extraordinary implications for the case and approval. Now a

timely opportunity to correct an irresponsible injustice intentionally dealt to the class

members is here. This discovery is absolutely, positively, indisputable and goes to the

heart of the "why" in this case so it should be allowed into the record. The Appellant

challenges the structural and procedural integrity of this entire settlement and will

bring the evidence to oral argument in case the Court allows in this discovery.

This Appellant could not find a single case where any district court approved a class

action settlement that contained clear and convincing evidence of fraud, misconduct

and improper motives like it does here. This Appellant also could not find a single

decision made by any federal appeals court affirming a class action settlement that

contained known elements of fraud. Based on the record, affirming this approval

would be unprecedented, violate Michigan Rules of Professional Conduct and

American Bar Association rules both of which prohibit fraud by lawyers in litigation.

### Conflicted Named Plaintiff's Void The Settlement And Approval

The meritorious, undeniable evidence shows numerous firms in this case cooked the

books to maximize their profit and obtain approval despite the numerous material issues left unresolved at the expense of the class. The evidence validates the involvement of Liaison and Class Counsel's top management that successfully duped the class of millions of dollars. There was no oversight to prevent this collusion scheme because the named plaintiffs let the lawyers "go rogue" due to the stated $240,000.00 in incentive awards promised to them early on for their endorsement. REC 155 Pg 20. The amount was later reduced by counsel to a $165,000.00 incentive request at the final approval stage which was awarded by the district court without any explanation for how the awards were calculated which voids the approval. REC 198 Pgs 42-43. With the huge volume of negative material information in the record like just 1% receiving a token, unknown amount due to the failed notice program and 3.5% cap on damages, the district court was prohibited from granting preliminary and final approval. "Class certification is appropriate if the [district] court finds, after conducting a 'rigorous analysis,' that the requirements of Rule 23 have been met." Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 722 F.3d 838, 851 (6th Cir. 2013) (quoting Walmart Stores, Inc. v. Dukes , 131 S. Ct. 2541, 2551 (2011). Rule 23(a)(4) requires that 'representative parties will fairly and adequately protect the interests of the class' . . . This requirement protects the due process interests of unnamed class members, who are bound by any judgment in the action." Lowery v. City of Albuquerque , 273 F.R.D. 668, 68 0 (D.N.M. 2011); see also Lile v. Simmons

,143 F.Supp.2d 1267, 1277 (D.Kan.2001) ("Due process requires that the Court

'stringently' apply the competent representation requirement because class members

are bound by the judgment (unless they opt out), even though they may not actually

be aware of the proceedings."). Accordingly, "there has been a failure of due process

only in those cases where it cannot be said that the procedure adopted fairly insures

the protection of the interests of absent parties who are to be bound by it." Hansberry

v. Lee , 311 U.S. 32, 42 (1940). Rule 23(g)(1)(A) states the court may [also]

consider any other matter pertinent to counsel's ability to fairly and adequately

represent the interests of the class. Fed. R Civ. P. 23(g)(l)(B); see also Rule

23(g)(2) (the court may appoint an attorney as class counsel only if they are adequate

under Rule 23(g)(l) and (4); (Class counsel must fairly and adequately

represent the interests of the class). The district court's opinion cited just one

section of Rule 23 that being Rule 23(e) 2 and ignored all the other applicable

sections, exactly like the Appellees did in their briefs. No 'rigorous analysis"

was ever performed that all Rule 23 requirements were met in this case.REC 213

Pg. 11. In Williams, the Sixth Circuit rejected a proposed settlement despite Class

Counsel's support. Although a court may "defer to the judgment of experienced

counsel who has competently evaluated the strength of his proofs," "[t]he court

should insure that the interests of counsel and the named plaintiffs are not

unjustifiably advanced at the expense of unnamed class members." Williams v.

Vukovich720 F.2d at 922-23.(6th Circuit 1983). "'An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" Geier v. Sundquist, 372 F.3d 784, 789–90 (6th Cir. 2004) (quoting First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 647 (6th Cir. 1993)). An abuse of discretion occurs when we are left with the 'definite and firm conviction that the [district] court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors' or 'where it improperly applies the law or uses an erroneous legal standard.' "United States v. Haywood, 280 F.3d 715, 720 (6th Cir.2002) (alterations in original) (quoting Huey v. Stine, 230 F.3d 226, 228 (6th Cir.2000)) - We may also find an abuse of discretion when we are "'"firmly convinced that a mistake has been made.'"" Addock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 349 (6th Cir.2000) (quoting Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560 (6th Cir. 2000).

### Fee Shenanigans By Liaison And Class Counsel Voids The Approval

The Appellees continue to claim that there is no harm and no foul in this case but the plethora of devastating evidence in the record shows plenty of "red card" fouls making the settlement unapprovable. Class Counsel also abandoned the class by designing and implementing a fraudulent plan to loot the settlement fund by treating it as their own personal piggy bank in this collusively constructed settlement. They

engaged in and fabricated a 34% or $5 million artificial hourly rate inflation fee scheme, up to a 34% or $5 million artificial hour inflation scheme and a $1.4 million attorney fee ghost promotion billing fraud scheme. Associates are listed and billed as partners in title only in the fee petitions for example but their lack of equity-holding status makes them in reality just an associate so their false partner artificially inflated non local billing rates defrauds the class. Plaintiff's scheme sold out the class and shortchanged its recovery. Their goal was not the most efficient and responsible stewardship to the class nor was billing judgment ever exercised, just a scheme to pillage the fund with the class the biggest losers in this "fox guarding the hen house" deal. Class Counsel's multitude of violations of their fiduciary duty of undivided loyalty to the <u>entire</u> class is grounds for a finding of inadequacy, cause for their dismissal, reversal of the deal and sanctions in this case.

The district court used Class Counsel's inflated $15.5 million lodestar as a reference and basis for a cross check on the $10 million percentage of fee award, REC 213 Pg 37. A "secret" forty-five minute sham conference call took place on Sept.19, 2014 at 10:00 a.m. and partners with three of the four Class Counsel's were on the line. They started off by asking if the Appellant was "tape recording the call", huh? (Red flag one). "I don't know the hourly rates in Detroit", (Red flag two). "We are straight shooters", (Red flag three). "If we reduced our fee to $7.5 million would you endorse the deal"? (Red flag four). This $7.5 million amount indicates it's the maximum

possible lodestar and half of the $15.5 million they falsely swore to. The false

lodestar number is confirmed twice by using Appellant's true calculations of the

hourly rates for this local area per court rules. If the hours overbilled is equal to the

34% overcharge in hourly rates we are not at $7.5 million but $5 million for lodestar.

So, the fee awarded using the lodestar as a cross-check is unreasonable because the

lodestar figures are fraudulent so it violates Rule 23(h). Normally when there is

fraudulent billing scheme uncovered there is an inquiry performed followed by civil

and/or criminal charges filed against the bad actors. No explanation, not a single

question or even a raised eyebrow occurred by anyone to address this issue in

addition to allowing the $1.4 million dollar attorney fee billing scheme into the

approval. By ignoring the material issues and the fee fraud scam, which makes up

14% of the fee award alone, the court made reversible legal errors, abused its

discretion and failed to address all pertinent sections of Rule 23.

## Clear Predisposition, Bias And The Appearance Of Impropriety By The Court

The unresolved, indefensible mirayd of material issues that were pointed out in detail

that were intentionally ignored and left uncorrected by the district court constitute

legal errors and abuse of discretion. One example, the district court approved this

deal without determining how much each individual class member would receive

which is used to help justify the amount of fees to award to Class Counsel. The

district court also made extremely biased and false assertions in the record that

unfairly benefits both sides at the expense of the class in the litigation by disregarding many of Appellant's meritorious filings when it wrote: "many of the [Mr. Andrews'] submissions [were] not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." The court also stated that it was "aware that other courts have noted that Andrews is known to be a 'professional objector' who has extorted additional fees from counsel in other cases". Re 213 pgs. 46-47. Seven objections in seven years does not make this appellant a "professional objector", he is not "known as a professional objector", has never "extorted additional fees", not filed a document to "harass Class Counsel", or ever filed a frivolous objection. Not one of the documents filed by this appellant falls under the court's own allegations above and the district court could not cite even one example in its opinion. The good faith evidence train is apparently unwelcome at the truth station. The biased and false allegations against this appellant and the meritorious claims on behalf of the class were made to deflect attention away from all the unresolved issues in this case. Next, not "other courts have noted…" (From two paragraphs above just one court noted). One claim was made by a lawyer at fairness hearing the objector was not even at and was repeated by that one court. The same false accusation was repeated by a lawyer in a second case, but not quoted by the court in the SDNY Lehman decision. The second court ignored the accusation then reduced plaintiffs' attorney fee by $24 million, almost the total value of this deal.

REC 172 Pgs.18,19. The following is from the written record that is the basis of the false extortion claims made by Class Counsel, Blue Cross and endorsed by the court. Here is what the Appellant wrote as to why a reduction of $1 million was in order for the class and a fair fee due the Appellant for this reduction, a 10% benefit increase to the fund. (This was before the discovery of all the additional tsunami of findings from September 2014 to date). "Here is how they want to calculate the fee to keep more for themselves at the expense of the class in this awful settlement. $30 million fund x 33% fee = $9,900,000 for them, then add the $3,500,000 in inflated expenses for a total take from the fund of $13,500,00.00. Doing it the right way take the $30,000,000 minus the costs of $3,500,000 first, leaves $26,500,000 x 33% fee equals a fee of $8,745,000. $9,900,000 vs. $8,745,000 is an overcharge of $1,155,000 to the class. The way class counsel figures it the class pays them twice on a double dip move". REC163 Pg127 top.

Class Counsel used the gross not the net amount to inflate their fee which the court should have addressed and justified. (They also incorrectly counted the $1.1 million in notice costs and the $165,000.00 in incentive awards as a class benefit.)

This is the bad faith basis Class Counsel uses to charge extortion, the district court agrees with it and encourages Counsel to feel free to pursue criminal charges. This is not remotely anywhere near nor justifies the criminal extortion accusations and endorsement made. It's preposterous and a diversion attempt to ignore the fact parade

in this case. The court also wrote in the opinion, "As to Class Counsel's claim that Andrews has engaged in criminal extortion, Class Counsel is free to pursue that claim with the appropriate authorities." RE 213 Final Opinion Pg 47 bottom.

The Appellant stated in the filings that the evidence shows a scheme to plunder funds from the settlement fund by engaging in fraud, inflating fees to the class then falsely swearing to it (28 U.S.C. Code §1746, Unsworn Declarations Under Penalty Of Perjury) and wire fraud. Counsel impermissibly billed office managers, receptionists, assistants, IT people, "others" that have no job status into the lodestar. They billed contract lawyers as of counsel, associates as partners (in other cases as well), associates as contract lawyers, traded lawyers among firms interstate with switched titles, double billed the class for duplicative work (Liaison Counsel and others) all of which counsels can't explain and the district court also ignored it. Appellant wrote that "someone call the FBI". REC 163 Pg 134 middle for that quote. The district court did not state in its opinion that the objector is free to pursue those claims with appropriate authorities despite the clear and convincing evidence. But it did state to Class Counsel on the record that "Class Counsel is free to pursue that claim (extortion) with the appropriate authorities" without any evidence of that assertion. This "extortion" label has now been falsely repeated three times in this case by Class Counsel, twice by the defendant and twice by the court. ("Extorted" and "extortion") A lie repeated often enough becomes the truth is a perfect example here. The parties

spent more time attempting to smear the objector in their documents (like 436 pages worth in Exhibit 169 1-9, and Doc. 171), at the fairness hearing and in the court's opinion rather than addressing and fixing the baker's dozen of issues in this case, which is their job, and the $1.4 million fee fraud scam that defrauds the class.

The fairness hearing started closer to 2:10 pm not 2:00 pm, and ended at 3:55 pm. 105 minutes divided by 88 pages means each page took on average 1.19 minutes to complete. This Appellant was forced to start the merit part of the fairness hearing on page 38 with the hearing ending at page 88 for a total of 50 pages. The $30 million merit part of the fairness hearing took just 59.5 minutes, (50 pages x 1.19 minutes each) clearly a biased, rubber stamp hearing. REC 198 Pgs 38 and 88. The above proves clear, convincing, antagonistic language and agenda driven bias by the court.

## Request For Reassignment

The Court possesses the power under appropriate circumstances to order the reassignment of a case on remand pursuant to 28 U.S.C. § 2106. Villegas v. Metro. Gov't of Nashville , 709 F.3d 563, 580 (6th Cir. 2013). To determine whether reassignment is necessary, the Court considers: (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

Williams v. Renal Care Group., Inc., 696 F.3d 518, 532–33 (6th Cir. 2012) (quoting Solomon v. United States, 467 F.3d 928, 935 (6th Cir. 2006)). "… statements indicate that allowing the same district judge to preside over this case on remand would compromise "the appearance of justice." Renal Care Group., 696 F.3d at 532. 696 F.3d 518 (6th Cir. 2012) "Any lost efficiency is not out of proportion to the gain in preserving the appearance of fairness."United States v. Gapinski, 422 Fed. Appx. 513, 522 6th Cir.2011.)  See also Howe et al., v. City of Akron file name 15a0231p.06, No.14-3352, Pgs 49-50 (6th Cir.2015) published September 17, 2015. The false extortion label bestowed twice by the district court, the willful neglect to diligently investigate the issues and the ruling itself proves it is biased against the appellant, class claims and biased in favor of the defendant based on what is in the record. See Rorrer, 743 F.3d at 1050 (holding that the district court judge's antagonistic statements "indicate that allowing the same district judge to preside would compromise 'the appearance of justice'" (quoting Renal Care Grp., 696 F.3d at 532)); John B. v. Goetz , 626 F.3d 356, 364 (6th Cir. 2010) (reassigning the case when the "the orders issued by the district court . . . contain[ed] increasingly accusatory language directed at the defendants"); United States v.Hagby ,20 F. App'x 299, 300 (6th Cir. 2001) (reassigning the case after the district court "forcefully expressed her dislike of drugs" at a defendant's sentencing).

### The Unavoidable Conclusion And Request for Relief

Nefarious actions and misconduct have occurred in the settlement, approval and
appeals process violating Rule 23(g) (1-4), (h) and (e). Class Counsel breached their
fiduciary duties to the class by leaving numerous material issues unresolved along
with certifying and submitting false and/or fraudulent attorney fee invoices all of
which the court ignored. The district court's ruling is manifestly unconscionable,
against public policy and due process. It used the wrong legal standards, applied
precedents unreasonably or incorrectly, followed improper procedures, abused its
discretion, made clearly erroneous findings of fact and law and was negligent
throughout the approval process. Based on the evidence, the lack of a mea culpa in
Appellees briefs and the utter hypocrisy of this deal, the Appellant requests that the
Court issue an order, opinion and/or written instructions that does not allow them two
bites of the apple and states; (1) the record reflects that a reasonable factual basis
never existed for the findings of the district court and/or the record reflects that the
findings are clearly wrong so vacate the district court's order approving the
settlement, the judgment certifying the settlement class, the award of attorney fees
and expenses and reassign for further proceedings; (2) Liaison and Class Counsel's
egregious misconduct has fatally contaminated this settlement making them unfit to
represent the class going forward because they fell off the truth wagon a long time
ago. They are to be removed without fees or expenses, sanctioned $5 million per firm
and recommend they never are allowed to be lead or co-lead counsel in any class

action ever again. The other firms that engaged in fee misconduct are to be sanctioned by forfeiting their fees and expenses as well; (3) the invalid named plaintiffs should forfeit their incentive awards and be sanctioned individually; (4) the individual lawyers who falsely swore and signed fraudulent fee petitions cheating the class of millions should be sanctioned and criminally charged for false swearing; (5) the attorneys that allowed themselves to be ghost promoted, many to partner status in the $1.4 million fee fraud petitions solely to benefit their firm's bottom line which defrauded the class should be sanctioned and charged; (6) based on the evidence in the record order the expert's class damage report, it's detailed invoice along with all expense records be placed on the docket to allow the class to authenticate them as Appellant had requested; (7) the Appellees lawyer's that composed and filed their misleading briefs are to be sanctioned; (8) reverse the denial of Appellant's sanction motion request; (9-10) reserved, in the event the Court allows in the profound finding; (11) order that this apparent white collar corruption crime matter be investigated by a federal grand jury in Detroit, Michigan. The evidence to date indicates that the federal court system has become intentionally ensnared as an accessory in this $118 million fraudulent settlement scheme that cheated up to seven million Michiganders out of "equal justice under law". I certify under penalty of perjury that all the information is true and accurate to the best of my knowledge.

Christopher Andrews, Pro Se Appellant October 05, 2015.

**Certificate of Compliance with Fed. R. App. Proc. 32(a)(7)(C)**

This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 15 pages and 3983 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii), as counted by Microsoft Word 2007. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a) (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Executed on October, 05, 2015

Christopher Andrews

**Proof of Service**

I hereby certify that on October 05, 2015 I sent by USPS Priority Mail this document

to the Clerk of the United States Court of Appeals for the Sixth Circuit and sent

copies to counsel of record via first class mail.

Executed on October 05, 2015

Christopher Andrews
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Email: caaloa@gmail.com
Pro se Appellant

**Addendum of Designations of Relevant District Court Documents**

As 6th Cir. R. 30(f) (1) requires, Andrews designates the following district court documents as relevant to this reply brief:

REC 124 Motion to Add and Drop Named Plaintiffs Pg 2

REC 155 Motion for Attorney's fees Pg 20

REC 163 Objection to Settlement Pg 127 top, Pg 135 top.

REC 169  Motion For Final Approval 1-9

REC 171 Blue Cross Blue Shield of Michigan's Memorandum In Support Of Motion For Final Approval Of Class Action Settlement.

REC 172 Sur-reply Pg 17 top, Pgs 18, 19.

REC 198 Fairness Hearing Transcript Pgs 38, 88

REC 204 Response To Corrected…

REC 207 Response to 206……

REC 213 Opinion and Order Pgs 46-47.

# RECEIVED

05, 2015                                    OCT − 7 2015

Attention: Clerk of the Court, DEBORAH S. HUNT, Clerk

Re: Shane Group. Inc., et al., v. Blue Cross Blue Shield Of Michigan

Case No. 15-1544

Please review before scheduling the specific judges that will hear oral argument in this case

Thank You

*Christopher Andrews*

Christopher Andrews, Appellant Pro se.

The new Appallee law firm of Sidney Austin LLP representing the Defendant Appellee has an attorney by the name of Jonathan Skakun III (aka John Skakun) who appears on the docket and is actively working for ratification of this approval. Upon review, Mr. Skakun's resume shows that he has clerked for Judge Danny J. Bloggs of this 6th Circuit Court of Appeals.

Linkedin website: "Associate at Sidney Austin, Location Greater Chicago Area Law Practice,  Past:  Law Clerk to Judge Danny J. Boggs at United States Court of Appeals for the Sixth Circuit Education: University of Chicago Law School, University of Notre Dame, Summary: John M. Skakun III is an associate in Sidney's Chicago office."

The Appellant respectfully requests that Judge Boggs be recused from hearing this case to avoid any appearance of favoritism or bias. If there is any other judge that has any connections like above or has/had any past direct or indirect financial relationship with any Blue Cross Blue Shield company the Appellant requests they also be recused from hearing this case as well.  Thank you.

Christopher Andrews, Pro se Appellant
PO Box 530394
Livonia, MI 48153-0394
Telephone 248-635-3810
Caaloa@gmail.com

# PRIORITY MAIL ★

- DATE OF DELIVERY SPECIFIED*
- USPS TRACKING™ INCLUDED*
- INSURANCE INCLUDED*
- PICKUP AVAILABLE
- \* Domestic only

USED INTERNATIONALLY,
USTOMS DECLARATION
EL MAY BE REQUIRED.

**Expected Delivery Day: 10/07/2015**

**USPS TRACKING NUMBER**



9505 5116 1330 5278 2971 62

---

FROM

# PRIORITY MAIL ★


**UNITED STATES POSTAL SERVICE** ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Andrews
PO Box 530394
Livonia, MI 48153

248-640-8752

United States Court of Appeals
For The Sixth Circuit
100 East Fifth Street Room 540
Cincinnati, Ohio 45202-3988

Label 228, July 2013          FOR DOMESTIC AND INTERNATIONAL USE

# VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE


**UNITED STATES POSTAL SERVICE** ®

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.